UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES DISTRICT JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

March 21, 2022

LETTER TO COUNSEL

RE: *Kelvin W. v. Commissioner, Social Security Administration*
    Civil No. SAG-21-921

Dear Counsel:

On April 13, 2021, Plaintiff Kelvin W., proceeding *pro se*, petitioned this Court to review the Social Security Administration's ("SSA's") final decision to deny his claims for Disability Insurance Benefits and Supplemental Security Income. ECF No. 1. I have considered Plaintiff's correspondence and the SSA's motion for summary judgment. ECF Nos. 16, 17. I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will grant the SSA's motion and affirm the SSA's judgment pursuant to sentence four of 42 U.S.C. § 405(g). This letter explains my rationale.

Plaintiff filed his claims for Disability Insurance Benefits on April 26, 2018, and for Supplemental Security Income on April 27, 2018, alleging a disability onset date of November 1, 2012. Tr. 226-33. Plaintiff later amended his disability onset date to September 26, 2015. Tr. 15, 45. His claims were denied initially and on reconsideration. Tr. 148-55, 157-70. On August 19, 2020, an Administrative Law Judge ("ALJ") held a hearing. Tr. 41-69. Following the hearing, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time frame. Tr. 12-40. The Appeals Council denied Plaintiff's request for review, Tr. 1-6, so the ALJ's decision constitutes the final, reviewable decision of the SSA. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000); *see also* 20 C.F.R. § 422.210(a).

The ALJ found that Plaintiff suffered from the severe impairments of "degenerative joint disease, degenerative disc disease, carpal tunnel syndrome, Sjogren's syndrome, lupus, arthritis, fibromyalgia, HIV, asthma, bipolar disorder, depression, and post-traumatic stress disorder." Tr. 18. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except never climbing ladders, ropes, or scaffolds and never crawl; occasional climbing ramps or stairs, balance, stoop, kneel, crouch; never be exposed to extreme cold, heat,

> humidity, and hazards such as dangerous moving machinery and unprotected heights; occasional exposure to fumes, odors, fumes, dusts, gases, or poor ventilation; frequent overhead reaching on left; and frequent handling bilaterally. [Plaintiff] can understand, remember, and carry out simple instructions and make simple work related decisions. Can work at a consistent pace throughout the workday, but not at a production rate pace, such as on an assembly line or work involving monthly or hourly quotas. Can tolerate occasional interaction with coworkers and supervisors and the public. Can tolerate occasional changes in work setting.

Tr. 22. The ALJ determined that Plaintiff was unable to perform past relevant work as an electrical tech or bartender, but after considering the testimony of a vocational expert ("VE"), found that Plaintiff could perform other jobs existing in significant numbers in the national economy. Tr. 32-33. Therefore, the ALJ concluded that Plaintiff was not disabled. Tr. 34.

I have carefully reviewed the ALJ's opinion and the entire record. *See Elam v. Barnhart*, 386 F. Supp. 2d 746, 753 (E.D. Tex. 2005) (mapping an analytical framework for judicial review of a *pro se* action challenging an adverse administrative decision, including: (1) examining whether the SSA's decision generally comports with regulations, (2) reviewing the agency's critical findings for compliance with the law, and (3) determining from the evidentiary record whether substantial evidence supports the agency's findings). For the reasons described below, the ALJ's decision applied the correct legal standards, and her conclusions are supported by substantial evidence.

Before reviewing the ALJ's decision in Plaintiff's case, it is worth explaining that the standard of review in any Social Security appeals case is couched in federal statute and case law. Under 42 U.S.C. § 405(g), "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." As explained by the Fourth Circuit:

> Under the Social Security Act, [the court] must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard. 42 U.S.C. §§ 405(g), 1383(c)(3); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir.1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)); "[i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.1966). In reviewing for substantial evidence, we do not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the Secretary. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir.1990). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir.1987). The issue before us, therefore, is not whether

[Plaintiff] is disabled, but whether the ALJ's finding that [he] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Coffman*, 829 F.2d at 517.

*Craig*, 76 F.3d at 589. In other words, a court does not review the evidence afresh; rather, it reviews the decision of the ALJ and evaluates whether the ALJ's decision is supported by the record. *See Theresa S. v. Saul*, Civil No. TMD-18-2850, 2020 WL 433861, at *4 (D. Md. Jan. 28, 2020) (explaining that a court will not review the evidence in a Social Security appeal *de novo*, "or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner").

In Plaintiff's case, the ALJ proceeded in accordance with applicable law. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a) (describing the SSA's five-step sequential evaluation for determining disability). First, the ALJ ruled in Plaintiff's favor at step one, determining that Plaintiff had not engaged in substantial gainful activity since his application date. Tr. 17; *see* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

At step two, the ALJ considered the severity of each of the impairments that Plaintiff claimed prevented him from working, finding several of Plaintiff's impairments to be severe and finding Plaintiff's hepatitis C and history of substance abuse to be non-severe. Tr. 18; *see* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Even where an ALJ does not expressly address at step two whether a purported impairment is severe, "there is no prejudice to the [plaintiff] if the ALJ sufficiently considers the effects of that impairment at subsequent steps." *Fountain v. Astrue*, No. CBD-11-1884, 2013 WL 145873, at *4 (D. Md. Jan. 11, 2013).

Here, Plaintiff argues that the ALJ failed to evaluate his impairments of attention deficit disorder ("ADD"), anxiety and panic attacks, social anxiety, and photosensitivity of the sun at step two. ECF No. 16 at 1. While the ALJ does not address these impairments at step two, they were addressed in Plaintiff's RFC. The ALJ explained that Plaintiff's anxiety symptoms contributed to the finding that Plaintiff had a moderate limitation in adapting and managing himself. Tr. 21. The ALJ also referenced Plaintiff's social anxiety, diagnosis for general anxiety disorder, Plaintiff's urgent care treatment for anxiety in April 2019, and Plaintiff's improved anxiety in September 2019. Tr. 23, 27-29. Regarding Plaintiff's photosensitivity to the sun, the ALJ determined that Plaintiff's lupus was a severe impairment at step two and elaborated in the RFC that Plaintiff's lupus caused photosensitivity. Tr. 23. Finally, regarding Plaintiff's ADD, the ALJ noted that Plaintiff began treatment with Adderall in May 2019 but that there was no diagnosis for ADD or attention deficit hyperactivity disorder ("ADHD"). Tr. 27. Accordingly, even though the ALJ did not address these conditions at step two, they were discussed and considered in the formulation of Plaintiff's RFC. Because Plaintiff made the threshold showing that several of his impairments were severe, the ALJ continued with the sequential evaluation process and properly considered all impairments when determining Plaintiff's RFC. *See* 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). Any step two error, therefore, would not necessitate remand.

*Kelvin W. v. Commissioner, Social Security Administration*
Civil No. SAG-21-921
March 21, 2022
Page 4

At step three, the ALJ determined that Plaintiff's impairments did not meet or medically equal the criteria of any listings. Tr. 18-22; *see* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). In order to meet the requirements of a listed impairment, the plaintiff must meet all of the elements of the listed impairment. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *Hays*, 907 F.2d at 1456-58. The ALJ identified and considered Plaintiff's physical impairments with regard to Listings 1.02, 1.04, 3.02, 14.02, 14.11, and Plaintiff's mental impairments in regard to Listings 12.04, 12.06, and 12.15. Tr. 18-22. Plaintiff argues that he meets the requirements of Listings 1.02, 1.04, and 14.02. ECF No. 16 at 2.

Listing 1.02 refers to a major dysfunction of a joint "[c]haracterized by gross anatomical deformity . . . and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s)." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.02. In addition to this requirement, the plaintiff must also provide evidence of either: A) "[i]nvolvement of one major peripheral weight-bearing joint (*i.e.*, hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;" or B) "[i]nvolvement of one major peripheral joint in each upper extremity (*i.e.*, shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c." *Id.* In this case, the ALJ stated that there was "no objective finding to show that [Plaintiff] has inability to perform fine or gross movements, or an inability to ambulate." Tr. 18.

Plaintiff argues first, in relation to Listing 1.02A, that he is unable to ambulate effectively because "I regularly walk with a limp due to chronic pain in my legs, knees, and hips. I utilize a walking cane to assist me 90% of the time." ECF No. 16 at 2. The inability to ambulate effectively includes, but is not limited to, "the inability to walk with the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.00(B)(2)(b)(2). Here, Plaintiff has alleged that he walks with a limp and uses a cane, but these are not examples of an inability to ambulate effectively. Additionally, as noted by the ALJ, there are many instances in Plaintiff's records where treating physicians indicated that Plaintiff had a normal gait. Tr. 649, 769, 2035. Therefore, the ALJ properly found that Plaintiff did not meet the requirements of Listing 1.02A. Regarding Listing 1.02B, the inability to perform fine and gross movements effectively, Plaintiff maintains that he has chronic pain, stiffness, and limitation of motion in his left shoulder. ECF No. 16 at 2. Listing 1.02B, however, requires involvement of a major joint in *each* upper extremity, not just one upper extremity. Plaintiff does not allege that he is unable to perform fine and gross movements with both his right and left upper extremity. Therefore, the ALJ appropriately determined that Plaintiff's left shoulder injury did not meet the requirements of Listing 1.02B.

Listing 1.04 covers disorders of the spine "resulting in compression of a nerve root or the spinal cord." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04. Specifically, Listing 1.04A requires "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of

pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine) . . . ." Id. § 1.04A. Plaintiff states that "there has been a compromise of [his] spinal cord" in addition to "a combination of neuro-anatomic pain, limited range of motion, and muscle weakness." ECF No. 16 at 2. Here, the ALJ noted that Plaintiff had a limited range of motion, but determined that the evidence did not show that Plaintiff had met all the required criteria for Listing 1.04A within a single 12-month period. Tr. 19. Plaintiff's records, summarized by the ALJ in Plaintiff's RFC, indicate possible nerve root compression due to Plaintiff's cervical radiculopathy diagnosis, neuroanatomic distribution of pain, and limitation of motion of the spine. Tr. 2040-41. Plaintiff's records, however, do not indicate motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss. As noted by the ALJ, Plaintiff had intact motor strength and sensation. Tr. 1478, 2040-41. Plaintiff complained of intermittent hand numbness and difficulty with his grip. Tr. 1025. However, "physical findings must be determined on the basis of objective observation during the examination and not simply a report of the individual's allegation; e.g., 'He says his leg is weak, numb.'" 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.00D. Therefore, Plaintiff's complaints are not sufficient as they are not based on objective observation during an examination. Accordingly, Plaintiff cannot demonstrate that he meets the requirements of Listing 1.04A.

Next, Plaintiff argues that he meets the requirements of Listing 14.02B related to his lupus and Listing 14.10B related to his Sjögren's syndrome. ECF No. 16 at 2. These Listings require, in addition to a diagnosis of lupus or Sjögren's syndrome, repeated manifestations of the condition in question with at least two constitutional signs or symptoms (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at a marked level: limitation of activities of daily living; limitation in maintaining social functioning; or limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence and pace. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 14.02. Plaintiff maintains that he has severe fatigue, depression, photosensitivity, and dry mouth due to these conditions. ECF No. 16 at 2. Plaintiff does not maintain that he has a second constitutional sign or symptom, specifically fever, malaise, or involuntary weight loss. Additionally, the ALJ determined that Plaintiff had only moderate limitations, not marked limitations, in each of the four functional areas: 1) understanding, remembering, or applying information; 2) interacting with others; 3) concentrating, persisting, or maintaining pace; and 4) adapting or managing oneself. Tr. 20-21. Therefore, the ALJ properly assessed that Plaintiff does not meet the requirements of Listings 14.02B or 14.10B.

Before continuing to step four, the ALJ evaluated Plaintiff's residual functional capacity ("RFC") by assessing the extent to which his impairments limited his ability to work. A plaintiff's RFC represents "the most he can still do despite his limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). When performing an RFC assessment, an ALJ is tasked with considering all relevant evidence, including a plaintiff's medical history, medical signs and laboratory findings, the effects of treatment, reports of daily activities, lay evidence, recorded observations, medical source statements, evidence from attempts to work, need for a structured living environment, and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable

*Kelvin W. v. Commissioner, Social Security Administration*
Civil No. SAG-21-921
March 21, 2022
Page 6

impairment. Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *2; *see also* 20 C.F.R. §§ 404.1529, 404.1545.

Here, the ALJ summarized Plaintiff's subjective complaints and testimony, treatment records, and medical opinions. Tr. 22-32. The ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but found that his testimony as to the intensity, persistence, and limiting effects of his symptoms was "not entirely consistent with the medical evidence and other evidence in the record." Tr. 23; *see Chater*, 76 F.3d at 594 (explaining the Fourth Circuit's two-part test for evaluating a claimant's subjective complaints).

The ALJ reviewed Plaintiff's complaints and testimony, stating that Plaintiff testified he experienced shortness of breath, back and leg pain, fatigue, photosensitivity, difficulty with focus, concentration, and memory, and sleep disturbances. Tr. 23. The ALJ also noted that Plaintiff testified to social anxiety and self-isolation except for doctor's appointments. *Id.* Regarding Plaintiff's daily activities, the ALJ noted that Plaintiff spent most of his day talking to his son. *Id.* Plaintiff argues that this is inaccurate because his son attends school. ECF No. 16 at 2. Reviewing Plaintiff's testimony at the hearing, he stated "Well, with COVID and everything, my son and I, we do a lot of talking . . . ." Tr. 57-58. Therefore, the ALJ properly reflected Plaintiff's testimony in the RFC. Whether Plaintiff and his son talk throughout the day or only when his son is not at school does not cause me to consider that remand is necessary or that there is not substantial evidence to support the ALJ's decision.

The ALJ then reviewed the medical evidence, including Plaintiff's treatment records for musculoskeletal impairments such as his lumbar spine, shoulder, neck, lower extremities, and hips; for his HIV and asthma; for his lupus and Sjögren's syndrome; and for his mental impairments such as depression, anxiety, and post-traumatic stress disorder. Tr. 24-28. The ALJ concluded that Plaintiff's records did not support Plaintiff's "statements about the intensity, persistence, and limiting effects of his symptoms." Tr. 28. Specifically, the ALJ pointed to records stating that Plaintiff had a normal gait despite Plaintiff's testimony that he required a cane; records showing that Plaintiff reported improved sleep after beginning treatment with Trazodone and after his shoulder surgery despite Plaintiff's complaints of sleep disturbances; and records and imaging indicating no spinal cord involvement and no positive straight leg raise tests, muscle atrophy, or reduced muscle strength or sensation despite Plaintiff's reports of radiating low back pain. Tr. 29.

Finally, the ALJ assigned weight to the opinions rendered in a prior ALJ decision and by examining and non-examining medical sources. Tr. 29-32. The ALJ found the prior 2015 ALJ decision that Plaintiff was limited to light work with additional restrictions to be somewhat persuasive, but noted that Plaintiff developed additional shoulder and upper extremity impairments since that time that required additional restrictions. Tr. 29. The ALJ found the initial state agency consultants' opinions that there was insufficient evidence to evaluate Plaintiff to be unpersuasive. *Id.* The reconsideration state agency medical consultant and psychological consultant opinions were found to be persuasive, and the ALJ included a detailed analysis as to what these consultants determined and why the ALJ found their opinions to be persuasive. Tr. 29-31. The ALJ found

*Kelvin W. v. Commissioner, Social Security Administration*
Civil No. SAG-21-921
March 21, 2022
Page 7

Dr. Wilberg's medical opinion to be unpersuasive and explained that it did not cite any evidence to back up his conclusions regarding Plaintiff's limitations and that the limitations opined did not match Plaintiff's treatment records from Dr. Wilberg. Tr. 31.

Ultimately, my review of the ALJ's decision is confined to whether substantial evidence, in the record as it was reviewed by the ALJ, supports the decision and whether correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390 (1971). Even if there is other evidence that may support Plaintiff's position, I am not permitted to reweigh the evidence or to substitute my own judgment for that of the ALJ. *Hays*, 907 F.2d at 1456. In considering the entire record, and given the evidence outlined above, I find that the ALJ supported the RFC determination with substantial evidence.

I note that Plaintiff attached two additional medical records as exhibits to his correspondence: 1) a letter dated September 2021 from Plaintiff's mental health therapist; and 2) an MRI report dated July 2021. ECF No. 16 at 4-6. Both of these documents are dated after the ALJ's September 2020 decision and the February 2021 Appeals Council review. Tr. 1-6, 12-40. This Court cannot consider evidence that was not presented to the SSA, but is permitted, if appropriate, to remand a case for consideration of new and material evidence pursuant to sentence six of 42 U.S.C. § 405(g). Sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.

42 U.S.C. § 405(g). When invoking sentence six, a court does not affirm or reverse the SSA's decision. *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991). "Rather, the court remands because new evidence has come to light that was not available to the [plaintiff] at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding." *Id.* (citing *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1991)). The September 2021 letter from Plaintiff's mental health therapist is not material because it does not add any new information for the ALJ's consideration. It simply reflects that Plaintiff has "certain limitations related to coping with stress," without further specification. ECF No. 16 at 4. Limitations related to coping with stress are already contained within the RFC. The July 2021 MRI report, while arguably material, does not contain evidence that might have changed the outcome of the prior proceeding. This report is from July 2021, and Plaintiff cannot show that these progressed conditions reflected in the report existed at the time of the Appeals Council decision in February 2021. Therefore, it is not appropriate for this Court to remand the case pursuant to sentence six of 42 U.S.C. § 405(g) for the ALJ to consider Plaintiff's attached records.

At steps four and five, the ALJ, relying on the vocational expert's (VE's") testimony, determined that Plaintiff was unable to perform his past relevant work as an electrical tech or bartender. Tr. 32; *see* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). However, in accordance with the VE's testimony, the ALJ determined that a person with Plaintiff's RFC could perform a

*Kelvin W. v. Commissioner, Social Security Administration*
Civil No. SAG-21-921
March 21, 2022
Page 8

restricted range of light and sedentary jobs existing in significant numbers in the national economy, including routing clerk, merchandise marker, photo copy machine operator, sorter, and document preparer.¹ Tr. 32-33; U.S. Dep't of Labor, *Dictionary of Occupational Titles* §§ 207.685-014, 209.587-034, 209.687-022, 222.587-038, 249.587-018 (4th ed. 1991). Because the ALJ determined that there were jobs existing in significant numbers in the national economy that Plaintiff could perform, she appropriately concluded that Plaintiff was not disabled under Social Security law. Tr. 34; *see* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v) ("If you can make an adjustment to other work, we will find that you are not disabled.").

For the reasons set forth herein, Defendant's Motion for Summary Judgment, ECF No. 17, is GRANTED, and the SSA's judgment is AFFIRMED pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion. An implementing order follows.

                                                          Sincerely yours,

                                                          /s/
                                                          Stephanie A. Gallagher
                                                          United States District Judge

---

¹ I have previously noted that the existence of the document preparer position, which specifically refers to preparing documents for microfilming, appears obsolete. *See Beau S. v. Comm'r, Soc. Sec. Admin.*, No. SAG-18-2083, 2019 WL 3208002, at *4 (D. Md. July 16, 2019). "While the Social Security Commissioner does take administrative notice of [the DOT] when determining if jobs exist in the national economy, common sense dictates that when such descriptions appear obsolete, a more recent source of information should be consulted." *Cunningham v. Astrue*, 360 F. App'x 606, 615-16 (6th Cir. 2010). Where a VE is citing a job that likely has been rendered nearly or entirely obsolete by advances in technology since the DOT was last published in 1991, reference to Occupational Information Network ("O*NET") to determine whether or not the position continues to exist might provide additional evidentiary support for an ALJ's conclusions. In this case, however, because the ALJ named other jobs that Plaintiff could perform given his RFC, remand is not warranted.